### KYLE appellant v. HOYLE appellee.

1. Where the issue tendered by one of several pleas was immaterial, and the demurrer thereto improperly over ruled, and no issue was joined on such plea, and the jury found for the plaintiff, the issue which they erroneously supposed to be joined on this plea, and the verdict was fully sustained by the finding of the other issues for the plaintiff, the Supreme court refused to reverse the judgment on account of the finding of the jury on such supposed issue. It was the fault of the defendant to tender such an issue, and it did not appear that he sustained any injury by such finding.

2. Where it is necessary to prove a demand and refusal, an instruction that the refusal must be of a *definite* character is erroneous, as it would be in the power of the defendant, by evasive answers and equivalent conduct, to render it impossible for the plaintiff to prove a *definite* refusal.

3. A covenant to make and deliver a deed, in the demand of the covenantee, is broken by the first refusal to comply with the terms of the covenant in this respect, and a *right of action immediately accrues* against such covenantor, and to this right there can be no bar but accord and satisfaction, or a release.

4. K. covenanted with H. to convey to him certain property for a certain consideration, and, in part payment of the consideration, received from H. two acceptances of D's for $10,870 00, without the endorsement of H. On account of the doubtful circumstances of D. these acceptances were taken as $5,000 00. H. delivered the acceptances to K. who converted them to his own use, and refused to perform his covenant. In an action of covenant, the court held the measure of damages to be the full amount expressed on the face of the acceptances, and interest on the same at the rate of ten per centum from the time they became due. Napton Judge dissenting on on this point.

### Appeal from St. Louis Circuit Court.

*Spalding for Appellant.*

1st. The jury having found for the appellee on the 4th

plea, when there was no rejoinder and no proof either of a demand of rents, the judgment is erroneous and should be reversed.

2d. The instructions given by the court below are wrong. 2 Stark. Ev. 568. 4 Hen. and Mun. 440.

3d. The instructions asked for by the defendant below ought to have been given.

4th. The verdict was excessive. 3 Cranch 298. 3 Wheat 200. 6 Wheat. 209.

*Allen on same side.*

The inquiry is, what is the measure of damages on behalf of plaintiff:—it is insisted that the measure of damages is the profit made by Kyle on those acceptances, and having exchanged them for real estate, the plaintiff is entitled to recover in this action the value of such real estate, and the jury actually gave damages to the amount of $13,014, this verdict was rendered on 23d Dec. 1839.

This rule of damages is denied by defendant, and on his part it is insisted that the true rule is the value of the property contracted to be conveyed at the time of default in making the conveyance, which value is either that which is proved in evidence, or that set on it by the parties in their contract, as the one or the other may be most advantageous to the plaintiff, and if the latter, interest on same from time of value being paid.

The damages in a case like the present is one of calculation, not one of vindictive damages, or smart money, nor is it one wherein damages for deceit or fraud if any in the case is to be recovered.

The value of the property as proved was ten thousand dollars. Interest on this at 6 per cent from 1st June '37 to 22d Dec'r '39 would with principal amount to $11,538 34; and at 10 per cent to $12,563 90. Take from these sums the order on Natchez of $4000 never paid, and the amount would be in lieu of the first $7,163 01, of the second $7,538 35, shewing an excess in damages by this calculation of at least $5,475 65.

If these views be correct they dispose of the instruction given by the court, touching the measure of damages, and

the 5th reason assigned for a new trial, unless that instruction be agreeable to the view taken above on that subject, and if so, then they shew the reasons 1st, 3rd and 4th assigned for new trial were well taken and in either case that the reason 4th assigned was well taken.

We come now to consider the refusal of the court to give the instructions asked by defendant, and in support of those instructions, the defendant relies as to 1st on the law of Va., incorporated in the bill of exceptions, and as to 2nd on the well settled principle that one may waive what is for his own benefit unless prejudicial to others. Authorities,—3 Cranch 298 and n. 6 Wheat. 109. 3 do 200. 2 Peters Dig. 1 sec. 2. 2 do 4. 3 do 32, 33, 34. 5 do 48. 5 Am. L. G. 330. 3 Carnes Rep. 111. 4 Johns do 1. 1 Miss. do 552. 3 do 391.

*Geyer for Appellee.*

1. There is nothing in the terms of the covenant requiring the plaintiff to make a demand of rent, before bringing suit, nor was he required to aver a demand in his declaration.— No such averment was made, the fourth plea therefore tendered an immaterial issue, and the demurrer thereto ought to have been sustained. 1 Chitty's pl. 287.

2. Whether the demurrer to the plea was properly over ruled or the plea be regarded as wholly unanswered, is immaterial. The plea assumes to answer, and answers only a part of the breach, and the plaintiff is entitled to recover for the failure to make the deed, although there be no right to recover rents.

3. The 3d rejoinder to the first replication to the several pleas of tender, admits the action pending in, &c., and that it was a lien at the time of the breach, and avers as a bar to an action for that breach, a release of the property from the lien after the bringing of this suit, and the demurrer to that rejoinder was therefore properly sustained.

4. The issues on the first and second rejoinders of the defendant were well taken to the country, because the laws of Va., and the effect of those laws as well as the existence of the suit, are matters of fact; but if the issues were improperly taken to the country, the fault is with the defendant

by whom they were tendered, and he cannot now complain, especially after verdict. Revised Code, 1835, page 468. 1 Chitty 482.

5. The testimony of Mrs. Brown was in all respects competent—she was not disqualified on account of interest.— She had formally released her interest, if any she had, before she was sworn, and she was sworn and examined without objection.

6. The first instruction asked by the defendant was properly refused.

7. That instruction was not authorised by the facts. The laws of Virginia as well as the decisions of their court prove the existence of a lien in such cases.

8. The second instruction was also correctly refused.

9. If the instruction was intended to mean what its language imports, that the jury were to inquire into matters subsequent to the breach, as constituting the waiver, it was clearly wrong, because it was not in issue. 1 Chitty 429.

10. This instruction assumes that a demand and refusal was proved, and the issue on the second plea maintained for the plaintiff—but that the jury must find for the defendant in that issue, if they find a matter of discharge not pleaded, and not in issue. It was a mere abstract proposition.

11. The two first instructions given by the court amount to nothing more than a direction to the jury, to find the issues according to the facts, as they appear to them in evidence. If any thing the first instruction was too strong for the defendant in requiring the plaintiff not only to prove a demand and refusal, as averred by the plaintiff, and denied by the defendant, but requiring the proof that the refusal was of a definite, (i. e. certain, exact, precise,) character.

12. The third instruction given did nothing more than to declare, 1st. That a tender of a deed, if proved, would not defeat the action, if the land was incumbered by a legal or equitable title, or a lien at the time of such tender, and this is admitted by the rejoinders of the defendant, and second, to refer the decision of the question of fact to the jury, according to the issue tendered by the defendant, and made between the parties. If the replication setting up the lien

was bad, it ought to have been demurred to; if good, and that is admitted by the rejoinder, the instruction cannot be wrong.

13. The measure of damages was correctly stated in the last instruction given by the court. The general rule in all such cases unquestionably is, that the plaintiff shall be restored to all he has lost by the breach, and in the case of a part payment, the amount advanced is to be included. 3 Starkie's Ev. 1613; 2d Saunders Pl. & Ev. 444, 445, (909, 911, margin,) Sudgen on vendors App. No. 8; 2 Taunt. 145; 2 Wm. Blackstone 1078; 6 Barnw. & C. 31; (13th E. C. L. R. 100;) 3 Wheaton 200; 2d Barnw. & C. 623; (9th E. C. L. R. 204;) 2 East. 211; 2 Wendall 399; 4 Rand. 346; 2 Ba. Ab. 266.

14. The instructions given by the court were not excepted to, and no advantage can now be taken of any misdirection, if it existed, unless it clearly appears that the verdict would have been otherwise, if there had been no such misdirection. Fleming v. Gilbert, 3 Johns. 528; Dole v. Lyon 10 Johns. R. 447; Goodrich v. Walker, 1 Johns. cases 250. De Payster v. The Columbia Ins. Co. 2 Caines R. 85.

15. It is the duty of every court, on motions for new trials, to take into consideration how far the error complained of, if any exists, was material, and grant and refuse the matter accordingly. Fleming v. Gilbert, 3 Johns. R. 528; Dole v. Lyon, 13 Johns. R. 447; Goodrich v. Walker, 1 Johns. C. 250; De Payster v. Columbia Ins. Co.; 2 Caines R. 85.; Hurst v. Burrell 5 Johns. R. 137.

16. From what has already been said the admission of the testimony of Mrs. Brown cannot be a cause for a new trial.

17. There was no misdirection of the jury by the judge. See authorities cited on 11th to 14th points. Nor was there any error in the refusal of instructions prayed for by the defendant. See the authorities on the 9th and 10th points.

18. The verdict is neither without evidence, nor against the weight of evidence on any issue, and even if the evidence were contradictory or doubtful, a new trial ought not to be granted. De Fouclear v. Shotterkirk; 3 Johns. R. 170.

19. The testimony of Mr. Risque neither found a tender,

or any thing which could avail the defendant. 1 Chitty 429.

20. The plaintiff having proved his deed, and the demand and refusal as alleged, and the defendant having failed to give any proof whatever of a tender, in either of the forms alleged in 3d, 4th, 5th, 6th pleas, all the bars set up by the defendant have been found against him upon clear evidence, and according to the weight of evidence, the plaintiff is entitled to recover, and the issues made on the first replication to the pleas of tender by the first and second rejoinders, are wholly immaterial.

21. Both the issues made by the first and second rejonders were well found for the plaintiff on sufficient evidence, and according to the weight of evidence; 3 Johns. R. 170.

22. The damages assessed are not excessive under the circumstances. Hopkins v. Lee, 6 Wheaton, 109. Shepherd v. Hampton, 3 Wheaton 200; Shepherd v. Johnson, 2 East. 211; Gainsford v. Carroll, 2 Barn. & C. 623, (9 E. C. L. R. 204;) Baldwin v. Meir, 2 Wendall R. 399; Baily v. Gray & al. 4 Rand. Va. R. 346; 2 Wendall 399; 4 Randolph 346; Floreau v. Thornhill 2 Wm. Bl. 1078; 13 E. C. L. R. 100; 3 Ba. Ab. 266 tit. damages; Hopkins v. Graelbrook 6 Barn. & C. 31, (13th E. C. L. R. 100;) 2 Sanders on Pl. & Ev. 444–5, (910–914.) Mercer v. Jones, 3 Campb. 447; 2 Saunders on Pl. & Ev. 419, (887.)

There is no error on the record, and the appellee is entitled to an affirmance of his judgment.

### Opinion of the Court by Tompkins Judge.

George Hoyle brought his suit in the circuit court in St. Louis County against Robert Kyle, where he obtained a judgment, from which Kyle appeals to this court.

Hoyle in his declaration, which is in covenant, states that Kyle had sold to him certain real property in the town of Lynchburg, in the State of Virginia, which is described in his declaration; and covenated, for himself and wife, to make a good "and valid title to the same, free from the claim of any person or pertons whatsoever, to Mrs. Mary Brown, and to cause to be paid to her, all the rents arising from said property, from the date of the covenant declared on. The

breach assigned is that Kyle had not conveyed the property, and had not caused the rents to be paid. Oyer of the instrument declared on was craved. In addition to what is stated (in the declaration,) of the contents of the covenant, we find, on oyer of the instrument, that Hoyle gave, as the price of such real property, two acceptances of N. and G. Dick and Co. of New Orleans, amounting to ten thousand eight hundred and seventy dollars, without endorsement by himself (Hoyle) or Mrs. Brown, and that Kyle took the same as five thousand dollars, and that Hoyle was also to give an order (*in the words of the instrument of writing*) on Natchez for four thousand dollars, payable out of a note due there the 21st, of July, then next, which said note was for the amount of ten thousand dollars, and that Kyle was to use his best efforts to further the collection of the said note, and after recovering the said sum of four thousand dollars, to pay or to cause to be paid over to the said Hoyle, or his order, the balance of six thousand dollars. The other covenants, contained in the said instrument of writing, are not material in the cause as presented by the evidence.

The defendant Kyle pleaded 1st. That the instrument of writing sued on was not his deed.

2nd. That the plaintiff had not before the commencement of the suit requested the defendant to make a deed.

3rd. That before the commencement of the suit he the defendant, tendered to Hoyle the plaintiff, a deed, according to the covenant, good and sufficient to convey the title in the property to Mrs. Brown &c.

4th. That there was no demand of the rents made by the plaintiff.

5th. That he did offer to deliver to the plaintiff, who was authorized to receive a deed &c. for the use of Mrs. Brown.

6th. That he tendered a deed to Mrs. Brown.

7th. That he tendered a deed to Hoyle, agent for Mrs. Brown.

Issues were made on the first and second pleas, and the plaintiff demurred to 3rd, 4th, 5th, 6th and 7th. These demurrers being over-ruled, the plaintiff replied to the third plea, 1st. that on the 10th day of May 1837, one Lorenzo

Norvell sued out of the Circuit Superior court of law and chancery, a writ of subpœna and attachment, whereby Kyle and others were summoned to appear before the said court, to answer a bill exhibited against them by said Norvell, and unless they should appear and answer the said bill within four months thereafter the court, would take the same for confessed, and that on the said writ was an endorsement to the following effect. 'To restrain the defendants, David R. Edley. The Lynchburg Manufacturing company, Clay and Thornton, Frances S. Miller, Lydick and Yancy, and Benjamin F. Hunt who are resident defendants, from paying, carrying away, transferring stock, securing the debts by them or either of them owing to, or the effects in the hands of either or all of them, of the defendant Robert Kyle, who is absent from the country, until the further order of the Court.' The replication then avers that the said writ, with its endorsement, was duly served on the said defendants, except the said Robert Kyle, before the making of the deed in the declaration set forth, and that under the laws of the State of Virginia, the said writ endorsed as aforesaid, being served on the said defendants, the right and title of the said Robert Kyle in and to the real estate described in the deed, became and was liable for the debt due from said Kyle to said Norvell, and was a lien upon said real estate at the time of bringing this suit.

A second replication to the third plea denies the tender of the deed in the manner and form stated in the declaration, and it was agreed by counsel on each side that these replications should stand also as replications to the fifth, sixth, and seventh pleas: The fourth plea being passed over without any notice of it. To the first replications to the third, fifth, sixth and seventh pleas, the defendant rejoins, that the said debt was not a lien on the said real estate, and did not continue to be a lien thereon as in the said replications stated.

2nd. That there was no such record as stated in the replications.

3rd. That after the suing out of the said attachment, and the service, thereof on the defendants, to wit: on the tenth day of August in the year 1837, Norvell the plaintiff in said

SEPT. TERM.
1840.

Kyle
v.
Hoyle.

attachment, discharged the property in the deed in the declaration mentioned, from the lien of said debt, and that on the 4th day of December in the year 1837, said Norvell dismissed his said subpœna and attachment out of said court.

A demurrer was filed and sustained to the third rejoinder. Issues were joined on the two first rejoinders.

On the issues thus joined, the jury found,

1st. That the indenture in the declaration mentioned was the deed of the defendant Kyle.

2nd. And as to the second issue they found that the plaintiff did before the commencement of his suit request the defendant to make the deed for the real property in the declaration mentioned &c.

3rd. And as to the issues made on the first rejoinder to the first replication of the plaintiff to the third, fifth, sixth and seventh pleas. they find that the debt in the replications mentioned was and continued to be a lien on said real property from before the time of making the deed in the declaration set forth until after bringing this action &c.

4th. And as to the issues made on the second rejoinders to the first replication of the plaintiff to the third, fifth, sixth and seventh pleas of the defendant, it is found that there is such a record as is stated in that replication.

5th. And as to the issues made on the second replications to the third, fifth, sixth and seventh pleas it is found that the plaintiff before the commencement of his action did demand from the defendant a deed for said real estate.

6th. On the issue which they erroneously supposed to be made on the fourth plea, the jury find that the plaintiff did before the commencement of his suit demand the rents of the property contracted to be conveyed.

The plaintiffs damages were assessed to thirteen thousand and fourteen dollars, and judgment was entered up against the defendant accordingly. The defendant moved for a new trial for the reasons following:

1st. The verdict is against law and evidence.

2nd. It is against the weight of evidence.

3rd. That it is against the instructions of the court.

4th. That it is excessive in amount.

5th. That the instructions given by the court to the jury are illegal.

6th. That the court refused to give the instructions asked by the defendant.

7th. That the court admitted improper testimony.

8th. That the witness Mary Brown was interested, and improperly admitted to testify.

The circuit court had instructed the jury,

1st. That if they believed there was a demand of a deed made according to the tenor of the covenant declared on, by the plaintiff of the defendant, and no refusal of a *definite* character made by the said defendant, they ought to find for the defendant.

2nd. But if the jury shall be of opinion that there was a demand of a deed made, and a refusal to give, before the commencement of this suit, on the terms of the covenant mentioned, they ought to find for the plaintiff.

3rd. If the jury shall be of opinion that the property in the deed described was incumbered by any legal or equitable title, or lien, at the time of the demand made by the plaintiff of a deed, or of a tender of a deed by the plaintiff, supposing such demand or tender to have been made, they must find for the plaintiff.

4th. The measure of damages in this case is the loss which shall appear to have resulted to the plaintiff by the breach of the covenant, including therein the consideration actually received by the defendant for his covenant.

The defendant then asked the court to give the jury the following instructions.

1st. That the proceedings in chancery offered in evidence constituted no lien on the property specified in the contract at the commencement of this suit—that the same was a lien only in case the personal property attached was insufficient, and there is no proof that it was insufficient.

2d. If the jury believe from the evidence that a demand was made by the plaintiff, and refused, and yet such demand and refusal was waived by the parties before the commencement of this suit, then such demand cannot be sufficient to sustain this action.

K 2

The circuit court refused to give these instructions, and the defendant excepted to the refusal.

The covenant was given in evidence, and it is such as was set out in the declaration, and in the statement of this case.

John Stacker, a witness on the part of the plaintiff, stated, that on the 2nd day of June 1837, he sold to Kyle the defendant certain lots in the city of St. Louis, and received from him in pay for them, two acceptances or bills of exchange of N. and J. Dick & co. of New Orleans, that those bills of exchange became due on the 1st day of January 1838, that he had received one third when they became due, and that then the balance due was secured by new notes which bore an interest of ten per cent per year; that at the time of his giving this evidence, he had received another third part of the whole demand, that he had sold the property to Kyle at what he thought a fair price, viz: ninety-five dollars per foot; that Kyle told him he had given seventy-five cents in the dollar for them in property situated in Lynchburg Virginia; that he and Kyle were two or three weeks engaged in making this trade; that he frequently told Kyle that he believed that Dick & co. were able to pay all their debts; and that, although the money might not all be paid when it became due, yet he was confident that they would ultimately pay all their debts.

The testimony of Stacker is contained in two depositions; and when the first was taken, he appears to have resided in New Orleans; it appears also that he was consulted by Kyle as a person who had much information as to the ability of the house of the Dicks & co. to pay their debts.

Mary Brown, a witness on the part of the plaintiff, objected to by the defendant on account of interest, stated that she was not interested in the suit, or in the subject matter of it. She then executed and delivered an instrument in writing to Hoyle in which it is stated, that whereas the suit was founded on a written agreement made by Robert Kyle with George Hoyle, and that whereas the said agreement purports to be made by George Hoyle on her behalf, and that certain real estate was therein covenanted by said

Kyle to be conveyed to her for the purpose of paying and discharging certain debts due to her by said Hoyle, and whereas the said debts so due to her from said Hoyle, had since that time been fully paid to her, otherwise than by the conveyance of the said land, therefore she released all her right, title, interest, claim, or demand arising from the said agreement upon which the action was founded, unto the said George Hoyle, his heirs and assigns, and all the right in law or equity arising therefrom, &c.

The witness then stated that Kyle had been acquainted with Hoyle and herself for a number of years at Lynchburg, but became more particularly intimate during the last eight months of their stay at that place; they all boarded at the same house, and were much in company with each other; the witness and Hoyle intended to go to Baltimore to live, but Kyle persuaded them to come to St. Louis; they all left Lynchburg together and came to Guyandot; the witness and Hoyle went thence to Natchez. While there, Hoyle received a letter from Kyle urging him to come to St. Louis, where they arrived on the 27th March 1837.— As soon as the boat landed, Kyle came on board; said he had been watching for them for two or three weeks, and expressed great pleasure at seeing them; Kyle conducted the witness to the house where he boarded, and not being able to procure a separate room for the witness, took lodgings himself in a room separate from his own family, and placed the witness in the room with them. On the 20th of May, Hoyle told the witness that Kyle wanted to trade with him for two acceptances he had on the Dicks of New Orleans, and had offered him Lynchburg property for them; Hoyle said if they traded he would have the deed made to the witness in order to secure her in the payment of part of the money she had loaned him; witness told him she did not want Kyle's property, and would not have it, and would tell him so the first opportunity she had. The next day they were both in the witness' room, and she repeated what she had said to Hoyle. Kyle appeared much disappointed, and said much about the value of the property in Lynchburg; that he had been offered ten thousand dollars for it, but considered it worth twelve; said he would be

running a great risk in taking the Dick's paper; that he did not know that he should ever get any thing for it; represented their failure as one of the worst in the United States, amounting to fifteen millions, and that it was probable they would not pay ten cents in the dollar, but that he was personally acquainted with them; he thought if any thing could be got from them, he would have a better chance of getting than Hoyle. The witness still refused to take his property in Lynchburg, and heard no more of the trade until the first of June, when Hoyle told her that Kyle had made another proposition to him, that if he would let him have the acceptances of the Dick's he would go to Natchez, and use his best endeavors to collect a debt of two thousand dollars, that would be due in July; he remarked to the witness that he would not be able to go himself, and that from the present state of his health, he did not know that he ever should be. The witness thought if she persisted in refusing her consent she might be the means of making him lose the debt in Natchez; so they made the trade. The next day the witness went to Kyle's to board, which she had been asked to do by himself and his wife; the following morning Hoyle came there, and told her what a trick Kyle had played on him; that he had deceived him by making false statements; Kyle shortly after came in, and Hoyle accused him of acting unfairly, and treacherously towards him. Kyle denied he had done any thing amiss, and would not give the deed that day; the next day being Sunday, Hoyle did not speak to him.

On monday morning the witness asked him if he intended to give the deed that day, he said he did not know, he would see about it, but that he wanted to have some talk with Hoyle about their partnership. The witness said she did not know that had any thing to do with his giving the deed; he replied yes it had; that he wanted that matter settled first; Hoyle came soon after and asked him if he would give the deed; he said he would see about it, but he said what about our partnership; Hoyle said he would not be a partner of his if he would ensure him ten thousand dollars a year, and not require him to put in a dollar; then, said Kyle, I will give

you no deed; Hoyle said, return me my acceptances then,

Kyle said he had traded them for property, Hoyle said give me the property; Kyle refused to do so, but said, suppose we have another trade; what boot will you give me betwixt the Lynchburg property and this in St. Louis, Hoyle told him that he wanted to have nothing more to do with him, but if he persisted in refusing to give the deed, he would expose him by publishing the whole transaction; Hoyle and witness left Kyle's and went to Cap. Mason's where Hoyle was boarding; the next day they neither saw nor heard of Kyle; but on Wednesday the 7th of June, he came, and as he entered the room, observed. well I have got the deed now, I hope that will satisfy you; Hoyle said he would wish Mr. Risque to see it; Kyle said he might see it, witness asked him if she might look at it; he said yes, I hope you will be satisfied now; witness replied that she was far from being satisfied with his conduct, that he made her a very rude answer, and jerked the paper out of her hands and left the room; that afternoon Hoyle said he would go and try to get the deed; witness said, as she knew Kyle had threatened to take his life, she thonght her presence might be some restraint on him, and determined to go also; they went accompanied by Capn. Mason, stopt at the gate of his tobacco factory, and sent in for him. As soon as he came out, Hoyle told him that he had come to ask him if he would give the deed; he said yes, if he would give the order on Natchez for four thousand dollars; Hoyle said here is the order, and took it out of his pocket; Kyle said his papers were not there, they were at his house; witness observed that she supposed they would go to his house; he said yes; and they all went, and were *ushered* into his parlor; Hoyle took a chair with his back against the wall, Mason on one side of him, and the witness on the other. Kyle soon came in with the deed, and seated himself immediately in front of Hoyle, their feet almost touching. Hoyle asked Mason to read the deed, and give his opinion of it; he said he believed it was a good deed according to the "*uses*" of Virginia. Kyle then said that Hoyle was to bear his expenses to Natchez, Hoyle said he was not; Kyle said he was a liar; Hoyle replied you are in your own house, and may

make use of what language you think proper; Kyle shook
his first in Hoyle's face, and asked him if he denied that he
was to bear his expenses to Natchez. Hoyle said he did
deny it, Kyle said he was a liar and a rascal, and made a
blow at his face, which he dodged to avoid, and slipped off
the chair; witness immediately got before him, that he might
have time to recover himself; Kyle came behind witness, and
tried to kick him, but not being able, he stept back and got a
chair, and was coming with it raised above his head to re-
new the attack, when Hoyle drew a pistol from his pocket,
and presented it at him. As soon as Kyle saw it he dropt
the chair and ran out of the room. Mrs. Kyle went up to
Hoyle and begged him to spare her husband's life; he assused
her he would for her sake. Kyle had left his papers scatter-
ed about the floor. Witness observed to Capn. Mason that he
had better take charge of them; he said he would take all but
the deed, and offered that to the witness; witness refused to
take it, but he insisted on her doing so, saying there was no im-
propriety in it. Hoyle then gave him the order to present to
Kyle, and they left the house; they had got a considerable
distance when Kyle came running after them, calling to the
witness to stop, that she had stolen his deed; they did stop;
and he came up to witness, again accused her of stealing
his deed, and took it from her by force, and the witness sta-
ted that she had never seen it since.

John F. Mason stated that some time in the early part of
June 1837, he accompanied Mr. Hoyle and Mrs. Mary
Brown, at the request of Mr. Hoyle, to the tobacco factory
of Mr. Kyle in the city of St. Louis. Mr. Kyle met them at
the gate that enclosed the factory. Mr. Hoyle stated to Mr.
Kyle that he had called on him to know whether he would
make him a deed to some property in Lynchburg Virginia.
Mr. Kyle said he would make the deed provided, Mr. Hoyle
would give him the order on Natchez for four thousand dol-
lars. Mr. Hoyle took the order and presented it to Mr.
Kyle saying here is the order. Mr. Kyle then said the deed
was at his dwelling house. Mrs. Brown said, then we can go
to the house and get it. Mr. Kyle then stated yes, and invi-

ted them to the house, when they got to his house they were
conducted into his parlor. Mr. Hoyle took a seat in a chair with his back to the wall, and his face to the west. Witness took a seat on his right hand, and Mrs. Brown on his left. Mr. Kyle took his seat immediately in front of Mr. Hoyle. Mrs. Kyle was seated immediately behind Mr. Kyle, rather to his left; Mr. Kyle presented to Mr. Hoyle a deed to the Lynchburg property; Mr. Hoyle handed the deed to the witness and asked him to read it; and pass his opinion on it; the witness did so, and said he thought it a good deed according to the forms and usages of Virginia. The witness handed the deed either to Mr. Hoyle or to Mr. Kyle, he does not recollect which, Mr. Kyle then said that if it was necessary for him to go to Natchez, Mr. Hoyle agreed to bear his expenses; to which Mr. Hoyle replied no sir, you are mistaken, I did not agree to bear your expenses. Mr. Kyle said it was a lie; Mr. Hoyle remarked, sir you are in your own house, and are at liberty to use what language you please. Mr. Kyle then said did or did you not agree to bear my expenses to Natchez? Mr. Hoyle replied, sir, I did not; upon which Mr. Kyle sprang from his chair, exclaiming at the same time, you are a liar, at the same time seizing Mr. Hoyle with his left hand, whether he struck or not witness does not know. If he did, witness neither saw it, nor heard it. Hoyle was in a falling position, at that time witness "slipped" between them, and with the assistance of Mrs. Brown separated them. Mr. Kyle stept back to the extreme part of the room and picked up a chair, advanced to Mr. Hoyle with the chair raised. Mr. Hoyle then drew and presented a pistol at Kyle. Mr. Kyle then dropt the chair and ran out of the room. The papers, to wit: the deed, and orders, with other papers, were scattered on the floor, witness picked up the papers and advised Mr. Hoyle and Mrs. Brown to leave the house, and at the same time handed the deed to Mrs. Brown, and requested her to take it with her, which she refused to do, witness told her he considered there was no impropriety in her taking the deed. Mr. Hoyle then handed to the witness the order on Natchez, and requested him to give it to Mr. Kyle, and Mrs. Brown then took the deed. At

which time they, Mr. Hoyle and Mrs. Brown, left the house Mr. Kyle came into the room after witness had sent for him; he asked where is my deed, witness told him that he had given it to Mrs. Brown. He said she has stolen my deed. Witness said no sir, she has not stolen your deed, I gave it to her, and I have the order on Natchez with a request from Mr. Hoyle to give it to you, and I will be responsible for the forthcoming of the deed if this matter is not settled. Mr. Kyle ran out of the house exclaiming she has stolen my deed. He hailed Mrs, Brown and Mr. Hoyle, and they stopt in the street; Mr. Kyle went up to them, and seized Mrs. Brown by the arm, jerked the deed away, saying you have stolen my deed, witness then remarked, sir, she has not stolen your deed; &c. I gave it to her, and I told you so at the house, witness then remarked to Kyle, that his conduct was exceedingly improper. Mr. Kyle then asked Mrs. Brown's pardon, and proposed that they should go back to the house. Mrs. Brown said that she could not go back after receiving such treatment as she had received there: witness then proposed that they should proceed down the street until they could get to some convenient place to exchange papers, witness and Mr. Kyle walked in advance of Mr. Hoyle and Mrs. Brown some fifteen or twenty steps. Mr. Kyle remarked to witness that he was wholly disqualified for business of any kind, and he did not consider himself in a situation to do business that evening. Witness then proposed to him that all the papers relative to the business be placed in his hands, and the parties meet at his house next morning at 8 o'clock, for the purpose of exchanging the papers. The proposition was made known to Mr. Hoyle and Mrs. Brown, and was assented to by all parties; the papers were placed in the witness's hands, and the parties met according to appointment. The witness then produced the papers i. e. the order and the deed; Kyle then refused to give the deed unless Hoyle would sign his name at the foot of a contract as agent of Mrs. Brown, witness bore the message to Hoyle who stated that he was willing to exchange the papers agreeably to contract, but was not willing to alter it, witness informed Kyle what Hoyle said, Kyle then said if Mrs. Brown would say at the foot of

the contract that George Hoyle was her agent, and sign her name to it, he would exchange the papers. Mrs. Brown refused to do it, and Kyle withdrew the deed, Hoyle left the order on Natchez in the witness's hands to be delivered to Kyle when he should deliver the deed. This order remained in the witness's hands twelve or fifteen days. At last Hoyle withdrew the order, and the witness believes that it was on the next day after that Kyle called on witness, and stated that he was then willing to exchange the papers as the contract stood. Witness told him he would see Hoyle when he came to dinner, and would let him know the result of the interview, that evening or in the morning. When Hoyle came in the witness informed him of Kyle's proposition. Hoyle requested witness to say to Kyle that he referred him to Mr. Risque, who had the papers. Witness told this to Kyle.

Mr. Risque, a witness for the defendant, stated, that before this suit was brought, Kyle came to him, and showed him the said deed with the acknowledgment, and he, the witness, remarked to him that it needed authentication: Kyle then went away, and some days after returned with the deed authenticated. Witness refused to receive it, saying that the land was attached; he had not heard of this when Kyle came to him the first time; that the papers were put into his hands by Hoyle for the purpose of bringing suit, and that when the deed was shown to him the second time, he assigned no other reason for rejecting it than that the land was attached in Virginia; that the want of authentication refered to was that of the certificate of the county court.

Mr. McCausland, a witness for the plaintiff, stated, that early in the spring of 1837, he received a letter from the defendant Kyle, before he came to the country, engaging rooms for himself and Mrs. Brown, as Mrs. Brown and his wife could not live apart; he introduced Mrs. Brown at the witness's house when she arrived; Hoyle boarded at another place; he thought there was great friendship betwixt the plaintiff and defendant. The defendant one morning in the early part of May (as witness thinks) took him one side and told him that Hoyle had bills of the Dicks for more than ten thousand dollars, that he thought he could get them for five

thousand, and that he had just seen Mr. Stacker, who told him the Dicks were good, and that he Stacker would give any real property he had for them. Witness answered that if Hoyle was such a fool as to take less than half for such paper as that it would be a good bargain. Kyle requested the witness to say nothing to Hoyle about it till he perfected the trade. Witness showed the property of Stacker to Kyle, says that he should not have assessed it at more than sixty or seventy dollars per foot. The distresses of the country were the subject of general conversation. Kyle seemed to take pains to introduce the subject at table at almost every meal, and always spoke of the Dicks disparagingly.

Several witnesses were examined on each side as to the value of the property purchased by Kyle from Stacker, with these bills of exchange, and also of the value of the paper of N. & J. Dick & co. at the time this contract was made by the plaintiff and defendant. The lots were valued variously at from fifty to one hundred dollars per foot, and the paper of Dick & co. was estimated at from fifty to seventy-five cents in the dollar.

A transcript of the record of the suit commenced in Virginia was given in evidence, and the statutes of Virginia under which the action was instituted.

The errors assigned are, 1st, That there was a judgment entered on the fourth plea when there was no replication to that plea.

2d. That a verdict was found negativing the fourth plea when there was no replication to it.

3. That the court gave wrong instructions to the jury.

4. That the court refused to give the instructions asked by the defendant.

5. That the circuit court refused to set aside the verdict and grant a new trial.

Where the issuetendered by one of several pleas was immaterial, & the demurrer thereto improperly overruled, and no issue was join-

On the first error assigned as well as on the second, it may be observed that had an issue been made on the matter in the fourth plea pleaded, it would have been wholly immaterial. It was the fault of the defendant that he pleaded that plea. It was his duty too, if any rent had been due, to pay it without demand, as he had covenanted to do so without

making it the duty of the plaintiff to demand. The words of the contract are "cause to be paid." He who contracts "to cause to be paid" contracts to pay, and if he pleads that *he did pay*, he may support that plea by evidences that he caused the money to be paid by his agent. The demurrer to that plea ought to have been sustained.

As to the third error assigned, it was correctly contended by the counsel for the appellee that,in the first instruction the circuit court committed error against the appellee. The court told the jury if they should find a demand made by the plaintiff, and no refusal of a definite character made by the defendant, in such case they must find for the defendant. Let this be established for law, and a defendant, who has a mind sufficiently composed to restrain his tongue when the demand is made, or is artful enough to equivocate, will never subject himself to an action, if he be a dishonest man. It was therefore rightly contended for the appellee, that if Kyle had put his hands in his pockets, and held his peace when the demand was made, this would have been good evidence to authorize the jury to find a refusal to make the deed. The defendant, appellant, asked the court, by way of offset to this instruction, to tell the jury that if they believed from the evidence that a demand of a deed was made by the plaintiff and refused, and such demand and refusal was waived by the parties before the commencement of this suit, then such demand cannot be sufficient to sustain this action. The court refused to give this instruction. We are not told by the appellant's counsel that the word "waive" has any technical signification, or indeed any meaning ascertained by the decisions of courts of law. When a covenantor refuses to perform his covenant on demand, I understand that the other party may sue or not sue, as he pleases. If he does not sue he may be said to waive his right of action, but what right the other party, who had committed the breach of his contract, would have to waive the right of the injured party, I am at a loss to conceive. In an action of assumpsit, the books tell us, matters in discharge which admit a former cause of action, may be given in evidence under the general issue. See Chit. plead. p. 418. But the same

SEPT. TERM 1840.

Kyle
v
Hoyle.

ed on such plea, and the jury found for the plaintiff, which they erroneously supposed to be joined on this plea, and the verdict was fully sustained by the finding of the other issues for the plaintiff, the Supreme court refused to reverse the judgment on account of the finding of the jury on such supposed issue. It was the fault of the defendant to tendersuch an issue,andit did not appear that he sustained any injury by such finding. Where it is necessary to prove a demand and refusal, an instruction that the refusal must be of a *definite* character is erroneous, as it would be in the power of the defendant by evasive answers and equivocal conduct, to render it im-

SEPT. TERM.
1840.

Kyle
v
Hoyle.

possible for
the plaintiff
to prove a *de-*
*finite* refusal.

author tells us at page 426 that matters in discharge of the action as a tender, set off, accord, and satisfaction before breach, former recovery, and release, must be pleaded in an action founded on a specialty; of this the counsel for the appellant appeared well enough apprised when the plea of tender was filed. But I suppose that they were not willing to stake their professional reputation on pleading as a discharge or release any matter that they may have here proved, and on the credit of which they claim this instruction about a waiver. This instruction then was in my opinion rightly refused. And Mr. Allen, one of the counsel for the appellee, rested the merits of the cause on the only point which admits of any room for argument, that is, whether the damages assessed, were such as to entitle the appellee to a new trial. I say this believing that the exception taken to the admission of the covenant declared on, in evidence on the allegation of a variance, and that to the competency of Mary Brown to testify, was taken pro forma only. I see no variance in the instrument produced and that as declared on, and the counsel has not attempted to show any, nor has he attempted to show why Mary Brown should not be held a competent witness.

It was proved abundantly that Kyle refused to make the deed according to the contract. Mrs. Brown states that on the 23d of June she went to Kyle's to board; on the next day Hoyle came there and told her what a trick Kyle had played on him, and that he had deceived him by false statements; that shortly after Kyle came in, and Hoyle charged him with acting unfairly and treacherously with him. Kyle denied doing any thing amiss, but would not give the deed that day. The next day being Sunday, Hoyle said nothing to Kyle. But on Monday morning the witness asked him if he intended to give the deed that day; he said he did not know, he would see about it, but that he wanted to have some talk with Hoyle about their partnership; the witness said she supposed that had nothing to do with the deed, and he replied yes it had, that he wanted that matter settled first; that Hoyle soon after came in, and asked him if he would give the deed; he said he would see about it, but, said he,

SEPT. TERM.
1840.

Kyle
v
Hoyle.

what about our partnership. And when Hoyle denied that he would enter into any partnership with Kyle, then Kyle said, I will give you no deed. Hoyle then demanded his acceptances. Kyle stated he had traded them off. Stacker, it will be recollected, stated that he had made the deeds for these lots, and received these bills of exchange on the 2nd day of June, three days before this scene.

The demand made of the deed on the 7th of June, two days after this last mentioned, is testified to both by Mr. Brown and Mr. Mason; On that occasion, he Kyle required Hoyle to bear his expenses to Natchez, in case it should be necessary to go; and when in the scene of confusion that ensued Mrs. Brown and Hoyle left the house, carrying off the deed by the advice of Mason, Hoyle leaving the order on Natchez in Mason's hands for him, he not only refused to receive it, but followed them into the street, and charged Mrs. Brown with stealing the deed, and forcibly took it from her. By one refusal to make and deliver the deed his cove- A covenant nant was broken, and the right of action against him accrued, to make and deliver a and to this right there can be no bar, but accord and satis- deed, on the demand of faction, or a release, either of which must be pleaded as above the covenan- stated. The offer on the 8th of June at the house of Mason tee, is broken by the first to deliver the deed even if it had not been accompanied with refusal to the condition could not have been pleaded as a bar to the comply with the terms of former breach. But accompanied with the condition it was the covenant in this respect not even a tender conformably to the contract; he made a and a right of tender to Mr. Risque, who testifies that he had orders to action imme- diately ac- sue on the covenant and not to accept a deed. There was crues against evidence enough to justify the jury in finding, 1st, that the such covenan- tor, and to this covenant was the deed of Kyle. Secondly, that Hoyle de- right there manded a deed and that Kyle refused to make and deliver can be no bar but accord & it; and thirdly, that Kyle did not tender one. This being satisfaction, or a release. the case even if the jury had found that the issues made on the first and second rejoinders to the 1st replications to 3d, 5th, 6th, and 7th pleas in favor of Kyle the defendant, viz: If they had found that there was no such record, and that the debt was not a lien on the real estate, it would have availed him nothing: It is not material then to inquire whether the court instructed the jury rightly, or whether the

jury found correctly under those instructions: It becomes necessary to inquire then whether the damages found are warranted by the evidence, and whether the rule for assessing damages prescribed by the circuit court was correct. The counsel on each side with great industry collected the law of the case. I shall not take the trouble to review any of their authorities, as the case appears to me a very plain one, and the rule which appears to me proper to be adopted here is agreed by both sides to be the correct one, viz: the consideration paid for that land, which Kyle covenanted to convey, and which the jury have found that he did not convey in accordance with his covenant. The consideration set out in the covenant is in these words, "and the said Kyle on his part has given as consideration for the aforesaid two acceptances of N. & J. Dick & co. of New Orleans, amounting to ten thousand eight hundred and seventy dollars without indorsement by Hoyle or Mrs. Brown, the receipt of which is hereby acknowledged, and which said Kyle takes as five thousand dollars, and likewise an order on Natchez for four thousand dollars, &c.

The plain common sense construction of this covenant is that Kyle agrees in consideration of these bills on N. and J. Dick and co., to make to Mrs. Brown a good and valid title, and to incur all the risk of the solvency of the acceptors.— He takes them at five thousand dollars because he covenants to make a good title free from the claim of all persons, and will be liable to refund that sum with interest, if the vendee should be evicted by a better title, while he risks the solvency of the acceptors of the bill. He then is in the condition of a broker who agrees to buy these bills for five thousand dollars in cash, and having by artifice got the bills into his possession and sold them, suffers himself to be sued, and when judgment, after a delay of two years, is obtained, he contends that the amount of the bills and interest is not the true measure of damages, but five thousand dollars which he had undertaken to pay for them eight months before they became due, incurring also the risk of the solvency of the acceptors.

If Kyle had conveyed this property according to his con-

tract; and Hoyle after such conveyance had discovered the advantage taken of his want of information, and then brought his action on the case for consequential damages, it appears to me that Kyle might have defended himself successfully against a recovery of damages by proving that the paper of the acceptors could not have been sold but at great discount, and that Hoyle might, by using due diligence, have acquired all the information necessary; perhaps a court of law would not even have required him to have proved any thing; but have required Hoyle to make out a case of fraud against him; Hoyle sold him the two bills of exchange, and an order on Natchez for a tract of land: he got into his hands the two bills and sold them, and refused to convey the land. The bargain is at an end. Hoyle must have back his notes; but Kyle has sold them to Stacker for St. Louis lots. Hoyle demands these, the lots, and Kyle in the language of a trader asks what *boot* he will give betwixt the Lynchburg property and these lots. If it had even been proved that nothing was collected on those bills, or could have been made on them, still Kyle ought to be answerable for the full amount; for he wrongfully converted them to his own use, and Hoyle himself might perhaps have made the money. But it was proved that one third was paid when they became due, and the other two thirds secured by new notes bearing an interest of ten per cent, and that before this judgment was obtained one half of the remainder was punctually paid, and no doubt was entertained of the punctual payment of the remainder. The notes of the most solvent men might be sold even by a prudent man at a great discount in consideration of receiving the money before the note became due. But if as before observed the purchaser were to get possession of such a note on the promise to pay down half its amount in cash, and then refuse to pay, every one sees that the measure of damages against him ought to be the amount of the note and interest. It is manifest from the face of this covenant that nine thousand dollars was intended to be the measure of damages Hoyle was to recover against Kyle in case the title to the real estate, contracted to be conveyed, should prove to be bad: and these two bills

SEPT. TERM.
1840.

Kyle
v
Hoyle.

SEPT. TERM. 1840.

Kyle
v
Hoyle.

K. covenanted with H. to convey to him certain property for a certain consideration, and, in part payment of the consideration received from H. two acceptances of D's for $10,870 00, without the endorsement of H. On account of the doubtful circumstances of D. these acceptances were taken as $5,000 00. H. delivered the acceptances to K. who converted them to his own use, and refused to perform his covenant. In an action of covenant, the court held the measure of damages to be the full amount expressed on the face of the acceptances, & interest on the same at the rate of ten per centum from the time they became due. Napton Judge dissenting on this point.

were estimated at the sum of five thousand dollars in consideration that Kyle took them for the land without endorsement. But he wishes to keep the land, and compel Hoyle to sell them at less than half their amount, to be paid whenever Hoyle can compel him in a court of law to pay. No case cited by either party is similar to this. They were all cases of a money consideration, and not of a property consideration like this. And it appears to me that if it be decided that Kyle, who got possession of this paper on the pretence of conveying land which he afterwards refused to convey, shall now be adjudged to pay only five thousand dollars, the measure of damages he was to pay in case the title to the land proved to be bad, that we in effect decide that, where two persons enter into a covenant mutually promising to each other, if one prove faithless he may under the protection of the courts of law avail himself of his wit to appropriate to himself the profits of the speculation which the other had promised himself, and to which according to the terms of the contract, he was justly entitled. Kyle estimated his Lynchburg property to be worth $12,000, Hoyle might have thought it worth much more. But Kyle agrees not only to reduce his price set on this property to $9000, but also to take in payment two bills of exchange for $10,870, eight months before they became due, and risk the solvency of the acceptors, &c. It would be an outrage on justice to say that Kyle should be allowed to hold his Lynchburg property which he had agreed to convey at a very reduced price, and still hold the bills at such an enormous discount. But we are to be told that the most experienced brokers say that at that time, this paper could not have been sold for cash but at an enormous discount: and both parties seem to have forgot that Kyle did not show any title to this paper either at its cash price or at any other price, having failed to perform his covenant, and is precisely in the situation as to the assessment of damages with a wrong doer.— But it is contended that the damages are excessive; and the jury having found an issue on the fourth plea for the plaintiff when no issue was joined on that plea, may have given damages for the non-payment of rents.

In addition to what was said of the error of the defendant himself having pleaded that plea, it may now be added that no evidence was given of any rents being due. The covenant was entered into on 1st. June and the action commenced on the 22nd of that month; no rents of any account could have occurred in that time, and no evidence of their amount being given, it is not probable that the jury had any regard to them. It is conceived that the proper measure of damages in such a case as this is the highest interest, on the sum of money in litigation, which the law allows, that is to say, ten per cent. per year. The damages assessed are thirteen thousand and fourteen dollars; according to my calculation the interest on the amount of the bills from the first of January 1838, when they became due, till the fourth day of December 1839, at ten per cent. per year amounts to $2096 35 which added to the principal gives an amount of $12,966 30. The jury then found about $47 65, more than under the circumstances of the case they ought to have done. The error was probably clerical merely. The plaintiffs will be allowed to remit that sum to wit: $47 35 and on their doing so the judgment of the circuit court will be affirmed.

*Napton Judge Dissenting.*

I do not concur in this opinion. I have no objection to the measure of damages laid down in the instructions of the court; but the verdict of the jury is unsupported by the testimony taking the consideration money and interest as the proper test.

There was no proof to show that the acceptances of the Dicks were at par. The brokers in New Orleans estimated them at fifty per cent. below par; Hoyle himself placed that estimate on them, Stacker, who purchased them, did not give his opinion of their cash value, but considered them below par. It we take the value of the property he gave in exchange for them as a criterion, we find that the most favourable valuation upon that property was at twenty five dollars per foot. McCausland estimated it at sixty, and the assessors at forty five and fifty. Taking the highest estimate, the acceptances were sold at a discount of twenty

L 2

per cent. Taking the mean estimate of the witnesses, they passed at thirty five per cent. below their nominal value, under the last estimate, the excess of the damages would be upwards of four thousand dollars; under the first, upwards of two thousand. The fraud spoken of in the books, as admissible to enhance the damages, I understand to be frauds in relation to the title, position or value of the property covenanted to be conveyed, as the failure to comply with the covenant is complained of, any fraud by which the loss sustained is proved to be beyond the value of the premises at the time of making the contract, very properly goes to the jury to enhance the damages. In such cases the jury may give the increased value of the property. The fraud attempted to be proved in this case was in relation to the value of certain negotiable paper in the hands of Hoyle. Had any such fraud been proved, it would in my opinion have been foreign to the case. I am also of opinion, that no fraud was proved. The jury found an issue which was not before them, namely, that the rents had not been paid. I do not undertake to say, that this error would require this court, on that ground only, to reverse the judgment, but because the damages are excessive and not justified by any testimony on the record (unless the jury thought themselves at liberty to give smart money for the supposed frauds of Kyle) the judgment should be reversed.